(No. 11342.—Reversed and remanded.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CHARLES B. MUNDAY, Plaintiff in Error.

*Opinion filed June 21, 1917—Rehearing denied October 5, 1917.*

1. CRIMINAL LAW—*what is necessary before jury can consider failure of accused to call witnesses.* Failure of the accused to call as witnesses those who may know the facts raises no presumption of law that if called they would testify unfavorably to him, and reference should not be made to such failure either in argument or in an instruction; and before the jury can consider such failure as a circumstance in determining the guilt of the accused it must be manifest that it is within his power to produce such witnesses and that they are not accessible to the People.

2. SAME—*the accused is not required to call any witnesses.* It is the privilege of the accused in a criminal case to produce witnesses and make a defense or not, as he chooses, and he cannot be required to produce witnesses who are equally accessible to the State and who are supposed to be in possession of facts having a bearing upon the truth or falsity of the charge against him.

3. SAME—*what error is prejudicial regardless of the state of proof.* Where the court erroneously holds, as a matter of law, that it is the duty of the accused to produce his co-defendants as witnesses and permits the jury to indulge in the presumption of guilt because of his failure to do so, the error is prejudicial regardless of whether the record tends to show that the jury could have reached no other conclusion from the evidence admitted than that the accused is guilty.

4. SAME—*prosecuting attorney should not comment on the numerous objections raised by accused.* The jury have no concern with the rulings of the court on the admission of evidence during the progress of the trial, and the prosecuting attorney, in his argument, should not be permitted, over objection, to comment on the numerous objections raised by the accused during the examination of the witnesses.

5. SAME—*when prosecuting attorney may comment on the fact that accused secured a change of venue.* Generally it is error for the prosecuting attorney to refer to the fact that the accused has secured a change of venue, as it must be presumed when a change is granted that such action was necessary in order to secure a fair trial, but where the counsel for the accused open the subject for discussion in their argument they cannot be heard to complain when the prosecuting attorney answers.

6. SAME—*motion to quash indictment after plea is filed cannot be considered unless plea is withdrawn.* A motion to quash an indictment after a plea of not guilty is filed cannot be considered unless, upon leave obtained, the plea is first withdrawn.

7. SAME—*whether State shall be required to furnish bill of particulars rests in discretion of court.* Whether or not the State shall be required to furnish a bill of particulars, and the character of such a bill, rests in the sound legal discretion of the trial court, and it is only in cases where it is clear that there has been an abuse of this discretion that the denial of a motion for such bill is error.

8. SAME—*when State's attorney may be required to elect which count will be relied on for a conviction.* The right to require the State's attorney to elect upon which count of an indictment he will rely for conviction is confined to cases where the offenses charged in the different counts of the indictment are distinct from each other and does not extend to counts charging separate objects of the same general offense.

9. SAME—*State's attorney is not required to fill panel of four jurors after accused excuses a juror.* Under section 21 of the act concerning jurors, all that is incumbent upon the State's attorney is to secure a panel of four jurors acceptable to him and tender them to the accused, and if, upon examination by the accused, a juror is excused for cause the State's attorney is not required to fill the panel, as he has the right to waive the privilege to challenge for cause and accept any juror he sees fit.

10. SAME—*what evidence tends to show that officers of a bank accepted worthless securities.* Where the officers of a bank are charged with conspiracy to defraud the bank's customers and the public, the testimony of the bank's receiver that he was unable to collect certain securities among the assets is admissible as tending to show that the securities were worthless when taken, where the bank had been doing business only a short time, as evidence of neglect of the maker of a note to pay it according to its terms is proper upon the question of value, as tending to show inability of the maker to pay.

11. SAME—*specific objection must be made to raise the question of best evidence.* In order to raise the question that the evidence introduced is not the best evidence a specific objection must be interposed.

12. SAME—*carbon copies of letters of a bank, constituting part of bank's records in hands of a receiver, are admissible as original records.* Where the officers of a bank are charged with conspiracy to defraud the public, carbon copies of the letters of the bank, con-

280 – 3

stituting a part of the records of the bank in the hands of a receiver after the bank's failure, are admissible as original records.

13. SAME—*books of bank are admissible on trial of officer of a bank on a charge of conspiracy.* While a defendant cannot be compelled to produce any of his private books or papers which may tend to incriminate him, an officer of a bank who is charged with conspiracy to defraud the public through mismanagement of the affairs of certain banks is not deprived of any constitutional rights by the introduction in evidence of the records of the banks in the hands of their respective receivers.

14. SAME—*what instruction as to credibility of defendant's testimony is erroneous.* It is error to give an instruction on the question of the credibility of the defendant's testimony, to the effect that, although the defendant has a right to testify, the jury are not bound to believe his testimony but in considering the credit to be given to it they may take into consideration his interest in the case and his desire to evade punishment for the crime with which he is charged.

15. SAME—*reputation, when put in issue, is properly a part of the defense.* It is error to instruct the jury that "a good reputation is no defense in a criminal prosecution," as reputation is properly a part of the defense if it is put in issue, and although not a defense to crime it is proper to be considered, with the other evidence, as a defense to a criminal charge.

16. SAME—*when Supreme Court will not review trial court's action in refusing instructions.* Where the number of instructions asked by the accused is so large that the trial court would have been justified in refusing to consider them and in requiring counsel to present a reasonable number, the Supreme Court will not review the action of the trial court in passing upon the instructions tendered by the accused and refused.

17. SAME—*court should not allow session to be interrupted to take photographs.* It is not in keeping with the dignity which a court should maintain or with the proper and orderly conduct of its business to permit its sessions to be suspended or interrupted to enable persons to take photographs or moving pictures of the trial.

18. SAME—*spectators should not be allowed on rostrum with judge.* Spectators at a criminal trial should be required to stay in the part of the court room intended for them and should not be invited or permitted to occupy the rostrum with the judge.

19. SAME—*accused should except to demonstrations by spectators and procure statement in bill of exceptions.* If the defendant in a criminal case desires to preserve for review the question of

demonstrations by spectators he should except to such demonstrations when made and procure the court to include a statement of the facts in the bill of exceptions.

CARTER, C. J., and CARTWRIGHT and CRAIG, JJ., dissenting.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on writ of error to the Circuit Court of Grundy county; the Hon. SAMUEL C. STOUGH, Judge, presiding.

JOHN E. HOGAN, WILLIAM A. ROGAN, and EDWARD H. MORRIS, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, MACLAY HOYNE, State's Attorney of Cook county, FRANK H. HAYES, State's Attorney of Grundy county, and JAMES H. WILKERSON, (EDWIN J. RABER, EDWARD E. WILSON, and W. H. HOLLY, of counsel,) for the People.

Mr. JUSTICE COOKE delivered the opinion of the court:

Charles B. Munday, plaintiff in error, and William Lorimer, Sr., Harry W. Huttig, Thomas McDonald, Charles G. Fox and John K. Segrave, were jointly indicted by a special grand jury in the criminal court of Cook county, the indictment consisting of thirty counts, charging them with the crime of conspiracy. The first count charges the defendants, and divers other persons whose names were unknown to the grand jury, with conspiracy to wrongfully obtain, by false pretenses, money from the public generally and from the following named corporations: The LaSalle Street Trust and Savings Bank, the Ashland-Twelfth State Bank, the State Bank of Calumet, the Broadway State Bank, the International Trust and Savings Bank, the Rosehill Cemetery Company, the Farmers' Bank of Bethalto, the Citizens' State Bank of Alhambra, Illinois, the State Bank of Oconee and the Illinois State Bank. The second count charges the defendants, and divers persons whose

names were unknown to the grand jury, with conspiring to cheat and defraud, by subtle and fraudulent schemes and practices, the Ashland-Twelfth State Bank, the Broadway State Bank, the Calumet State Bank, the International Trust and Savings Bank and the Illinois State Bank of their property by false pretenses and by entering into an unlawful, fraudulent and collusive agreement and understanding with the officers and directors of said banks whereby such officers and directors were to unlawfully turn over to the LaSalle Street Trust and Savings Bank, and to the defendants, and to divers corporations and concerns controlled by the defendants, the money and property of said banks in exchange for notes, mortgages, bonds, drafts and certificates of deposit of little or no value, as the defendants and the officers and directors of said banks well knew, and to cause said banks to purchase from the defendants, and from the LaSalle Street Trust and Savings Bank and other corporations and firms which the defendants controlled and operated, notes, mortgages, bonds, bills of exchange and certificates of deposit at a price greatly in excess of their real value, as the defendants well knew. The third count charges the defendants with conspiracy to cheat and defraud the LaSalle Street Trust and Savings Bank, by the defendants Lorimer, Munday, McDonald and Fox, who were salaried officers and employees of the bank, turning over to the defendants the money and property of the bank in exchange for notes, drafts, bonds, stocks, bills of exchange, securities and mortgages of little or no value. The fourth count charges the defendants Lorimer, Munday, Fox, McDonald and Huttig with conspiracy to procure fraudulent, bad and desperate loans to be made by the LaSalle Street Trust and Savings Bank to Lorimer, Munday, McDonald and Fox, all salaried officers or employees of the bank, and to certain firms and corporations controlled by Lorimer and Munday, and in the management and control of which they were actively engaged, without first having said loans ap-

proved by the board of directors of the bank. The fifth count charges the defendants Munday, Huttig, McDonald, Fox and Segrave, and divers other persons whose names were unknown to the grand jury, with conspiracy to obtain certain trust funds from the Rosehill Cemetery Company by false pretenses, and to cheat and defraud the Rosehill Cemetery Company by subtle schemes and practices, and by entering into an agreement whereby the defendants Huttig and Munday, who were, respectively, president and secretary and treasurer of the Rosehill Cemetery Company, were to transfer to the LaSalle Street Trust and Savings Bank, and to Lorimer, Munday, Huttig and Segrave, and to divers corporations and concerns controlled by them, the said trust funds in exchange for mortgages, notes, drafts, securities and certificates of deposit of little or no value, as the defendants well knew. The sixth count charges the defendants, and divers other persons whose names were unknown to the grand jury, with conspiring to obtain goods, funds and property from the stockholders, creditors, customers and depositors of the LaSalle Street Trust and Savings Bank by publishing and circulating a false and untrue statement showing said bank to be solvent, when, as the defendants well knew, the said bank was, and for a long time had been, insolvent, but which condition was not known to the said stockholders, creditors, customers and depositors of the bank. The ninth count charges the defendants with conspiracy to cheat and defraud the Rosehill Cemetery Company by purchasing, as officers of the cemetery company and with trust funds of the cemetery company, certificates of deposit of the LaSalle Street Trust and Savings Bank, of which they were officers and agents, well knowing that said certificates of deposit were of little or no value. The tenth count charges the defendants with conspiracy to obtain money and property from the International Trust and Savings Bank by means of the confidence game, and the eleventh count charges them with con-

spiracy to obtain money and property from the same bank by means of false pretenses. The twelfth, thirteenth, fourteenth, fifteenth, sixteenth, seventeenth, eighteenth and twentieth counts charge the defendants with conspiracy to obtain money and property from the LaSalle Street Trust and Savings Bank, the Ashland-Twelfth State Bank, the State Bank of Calumet and the Broadway State Bank, respectively, by means of false pretenses or by means of the confidence game. The nineteenth count charges the defendants with conspiring to obtain money, notes, stocks, bonds, securities, bills of exchange and drafts of the public. The twenty-first count charges the defendants with conspiring to obtain money and securities from the depositors of the State Bank of Calumet. The twenty-second, twenty-third, twenty-fourth and twenty-sixth counts are the same as the twenty-first, except the Broadway State Bank, the International Trust and Savings Bank, the LaSalle Street Trust and Savings Bank and the Ashland-Twelfth State Bank, respectively, are named in the respective counts in the place of the State Bank of Calumet. The twenty-seventh count charges the defendants with conspiracy to embezzle the money and property of the LaSalle Street Trust and Savings Bank. The twenty-eighth count charges the defendants with conspiracy to deceive the State Auditor and bank examiners by making and causing to be made false statements pertaining to and affecting the liabilities and assets of the LaSalle Street Trust and Savings Bank. The twenty-ninth count charges the defendants with conspiring with the officers and directors of the Ashland-Twelfth State Bank, the Broadway State Bank and the State Bank of Calumet to deceive the State Auditor by falsely representing to him that the capital stock of the said banks had been paid in in cash pursuant to law, and thereby induce the Auditor to issue certificates authorizing said banks to transact banking business. The twenty-fifth count was quashed, and upon

motion of the State's attorney the court entered a *nolle prosequi* as to the seventh, eighth and thirtieth counts.

Plaintiff in error made a motion to quash the indictment, which was overruled as to all except the twenty-fifth count. He then entered a motion, supported by affidavit, praying for a bill of particulars. This motion was allowed in part and overruled in part, and a bill of particulars in accordance with the order of the court was furnished. Thereafter, on April 9, 1915, he entered a plea of not guilty and obtained a change of venue from Cook county, the cause being transferred to Grundy county for trial of the charge against him. A motion made by plaintiff in error in the circuit court of Grundy county for a more specific bill of particulars was denied and the cause was set for trial. On September 27, 1915, the cause was called for trial and plaintiff in error interposed a challenge to the array, which was overruled. The jury empaneled to try the cause found Munday guilty and fixed his punishment at five years' confinement in the penitentiary. Munday sued out a writ of error from the Appellate Court for the Second District, where the record of the circuit court was reviewed and the judgment was affirmed. This writ of error has been sued out by plaintiff in error to obtain a reversal of the judgments of the circuit and Appellate Courts.

The taking of evidence in this case extended over a period of several weeks. A multitude of transactions in which plaintiff in error and his co-defendants had participated and which resulted in financial loss to stockholders and depositors of various banks were investigated, and this evidence tended strongly to show that plaintiff in error was guilty of the crime as charged in various counts of the indictment. On the other hand, plaintiff in error testified in his own behalf and offered other evidence from which the jury could have found that plaintiff in error was not guilty of the crime of conspiracy as charged in the indictment. As the judgment must be reversed for errors hereinafter

noted and the cause remanded to the circuit court for a new trial, we refrain from commenting upon any of the evidence offered by the People or by plaintiff in error upon the trial of the cause.

Numerous grounds are relied upon for reversal. The record is very voluminous and the evidence covers a wide scope. It would be remarkable in a trial of this character and with a record of this size if the case should be entirely free from error. Many of the matters assigned for error are without force, but some of them are so serious as to work a reversal of the judgment. The most serious error was in permitting counsel for the State to indulge in improper argument to the jury. In his closing argument F. H. Hayes, the State's attorney for Grundy county, referred to the fact that plaintiff in error had not called his co-defendants as witnesses, as follows: "A peculiar thing right now about those transactions—about these defendants: If they were as fair and clean as counsel would have you believe, why isn't William Lorimer here? Why hasn't he been here to face you?" Whereupon the following occurred:

Mr. Hogan: "I object to the statement and except to it.

Mr. Hayes (continuing): "Why hasn't Mr. Huttig been here to face you?

Mr. Hogan: "I object to the statement, your honor, and ask for a ruling.

The court: "On what ground?

Mr. Hogan: "On the ground that it is improper.

Mr. Hayes: "It hurts; that is the ground.

Mr. Hogan: "Wait a moment; we asked for a ruling."

Thereupon a discussion occurred between the court and counsel for each side, in which the court stated that he was inclined to overrule the objection, but if counsel for plaintiff in error had any authority upon the subject he would like to see it. As the time for adjournment for the day had about arrived, the court requested the State's attorney

to defer argument along that line until the following morning. All this occurred in the presence of the jury. On the following morning, and before the jury was brought into court, counsel submitted their authorities to the court and he stated that he would overrule the objection. Thereafter H. N. Bell, one of the assistant State's attorneys for Cook county, made the following statement in his closing argument to the jury: "He says it is improper to refer to the fact that a defendant does not take the stand. He made that objection to the court and asked that the reference be stricken out, and he appealed from the court to jury, and read law books, and gave us a great, long discussion about it. I think he read the statute. Now, that is the statute. It is the statute that you have no right to refer to a defendant's failure to take the stand. The law gives that protection to a man. You cannot comment upon the failure of the defendant to take the stand. Now, what about that? Then why all this talk? The law is just equally as plain that when a defendant does take the stand he becomes the same as any other witness, subject to the same rules of cross-examination and comment. He cannot go on half way and stay off half way. If he goes on he must go on all the way, and when he takes the stand that is what he does, and he exposes himself to comment just the same as any other man. It cannot hurt him or prejudice him that William Lorimer and Huttig were commented on or were named in the indictment but not defendants in this trial. And I want to tell you he had the right, and under the law it was his duty, connected with these people as he is, under the law it was his duty to bring those people here, under the summons and power of the court if they wouldn't come, and put them on the stand, and if they wanted to they could refuse to testify upon the ground that it would incriminate themselves, and that is all there is to that." To this statement counsel for plaintiff in error objected and the objection was overruled.

It is first contended on the part of defendant in error that these statements of counsel in argument were legitimate replies to statements made by counsel for plaintiff in error in their arguments to the jury. This contention can not be sustained. The only reference made by counsel for plaintiff in error in their arguments to Lorimer and Huttig was based on proof that was in the record as to the various transactions participated in by them and as to the various enterprises in which they were interested. This argument was legitimate and afforded no basis whatever for the reference made by counsel for the State to the fact that plaintiff in error had failed to call these defendants to testify. It is evident that counsel were endeavoring to have the jury draw the inference that the testimony of the co-defendants would have been adverse to plaintiff in error and for that reason he had not called them as witnesses, and therefore the jury were warranted in presuming the plaintiff in error to be guilty of the offense charged.

Defendant in error contends that it is proper for the State to comment on the failure of a defendant to produce a witness when such witness, by reason of friendship, association or interest, is more available to the defense than to the State. While there is some apparent conflict in the authorities, the general rule is that the omission or failure of a defendant in a criminal prosecution to call as witnesses those who could testify of their own knowledge to material facts raises no presumption of law that if called they would have testified unfavorably to him, but the jury may consider his failure to produce or to endeavor to produce such witnesses as a circumstance in determining his guilt, provided it is manifest that it is within the power of the accused to produce such witnesses and that such witnesses are not accessible to the prosecution. (12 Cyc. 385; *Commonwealth* v. *Webster,* 5 Cush. 295; *State* v. *Cousins,* 58 Iowa, 250; *State* v. *Fitzgerald,* 68 Vt. 125; *Brown* v. *State,* 98 Miss. 786; *Brock* v. *State,* 123 Ala. 24.) It

does not appear that plaintiff in error attempted to suppress any evidence or to prevent the State from having access to any witness who could testify to any material facts. Lorimer and Huttig were jointly indicted with plaintiff in error and they had not yet been tried. It follows that they were either in custody or at liberty on bail. It does not appear that they were any less accessible to the State than they were to plaintiff in error. Whether called by plaintiff in error or by the State their testimony could not have been secured without their consent, as they had the constitutional right to decline to testify if matters concerning which they were interrogated would tend to incriminate them. In *Johnson* v. *State,* 94 Miss. 91, the district attorney called the attention of the jury to the fact that the defendant did not produce his wife as a witness. In that State the statute permits a wife to testify on behalf of her husband with the consent of the wife. For these remarks the judgment of conviction was reversed. In *Brown* v. *State, supra,* the prosecutor in his argument called the attention of the jury to the fact that the defendant had failed to produce his father and brother as witnesses, both of whom, it appeared, were in possession of material facts and both of whom were in the court room during the progress of the trial. The judgment was reversed upon the ground that these witnesses were equally accessible to the State and the defendant, and the failure of the defendant to call them afforded no foundation for drawing the inference that their testimony would have been prejudicial. In *Brock* v. *State, supra,* counsel for the State commented upon the fact that a co-defendant not on trial had failed to take the stand. Upon objection the trial court held that the argument was legitimate. In reversing the case the Alabama Supreme Court stated: "In the present case Coppin could not have been compelled to testify to any fact tending to criminate himself. The offense being one of which he and the defendant must both have been either guilty or innocent, his

mere refusal upon the ground of self-incrimination might have been construed by the jury to the defendant's disadvantage. On the contrary, if he had not declined, the credibility of his testimony would have been open to assault upon the ground of interest. If, in view of the fact that the scope allowed to his examination would have depended largely upon Coppin's own volition, the testimony could be deemed accessible to the defendant, yet it does not appear to have been less accessible to the State. Under the circumstances no presumption could arise that the testimony was withheld from sinister motives, and the jury should have been left to try the issue upon the evidence introduced. The proneness of the jury to consider a defendant's failure to testify in his own behalf, and the prejudice to the defendant which would naturally result therefrom, induced the legislative prohibition against any adverse comment in argument upon such failure. The statute does not cover this precise case, but the argument was improper under the general rule before stated, and in determining its effect we are impressed with the consideration that the same results which the statute intended to forestall when the defendant is not examined may follow, as well, when the person not produced is one jointly implicated with the defendant. The argument objected to was therefore forcibly calculated to injure the defendant's case, and the error committed in its indulgence must work a reversal of the judgment." To the same effect is *Hopkins* v. *State,* 11 Okla. Crim. 385. In *People* v. *Blumenberg,* 271 Ill. 180, the State's attorney was permitted, over objection, to state that one of the defendants was absent, residing in Paris, and had not been in this country since the indictment was brought and for that reason was not on trial, and that if there was one man who could come there and assist the plaintiff in error in making his defense he had sought safety in France. It was held that this constituted prejudicial error. While the precise question raised here was not in-

volved in that case it is somewhat analogous. It was not peculiarly within the power of plaintiff in error to produce Lorimer and Huttig as witnesses. They were as accessible to the State as to the defense, and it was error for the court to permit counsel for the State to refer to the fact that they had not been called as witnesses.

The language used by counsel for the State goes further than merely offending against the general rule. Bell stated that it was the duty of plaintiff in error, under the law, connected with Lorimer and Huttig as he was, to bring them there, under summons and power of the court if they would not come otherwise, and put them on the stand, and then called attention to the fact that if they saw fit to do so they could refuse to testify upon the ground that they would incriminate themselves. In *State* v. *Cousins, supra,* the trial court instructed the jury that the defendant had the right to call his co-defendant as a witness, and the fact that he had not done so when he could have been called and examined was a circumstance that might be taken against him and that the jury might give it such weight as they thought it was entitled to. The Supreme Court of Iowa in reversing the judgment of conviction for the giving of this instruction said: "The doctrine that the failure of the accused to introduce evidence explanatory of inculpatory circumstances may be regarded as a circumstance against him is to be cautiously applied, and only in cases where it is manifest that proofs are in the power of the accused not accessible to the prosecution. (Wills on Circumstantial Evidence, (5th Am. ed.) 1876; *Commonwealth* v. *Webster,* 5 Cush. 295; *State* v. *Rosier,* 55 Iowa, 517.) A defendant in a criminal case is by statute made a competent witness in his own behalf, but the fact that he does not become a witness is not to have any weight against him and must not be alluded to on the trial. (Miller's Code, 3636.) There is even greater reason why the failure to call as a witness an alleged accomplice should

not be regarded as a circumstance against the accused. A degree of discredit is by the State cast upon the accomplice by accusing him of a crime, and the defendant might well conclude that his testimony would have but little weight. The accused may, in fact, be innocent and the alleged accomplice guilty. Under such circumstances the accused might be greatly prejudiced if he should call his co-defendant, who might shield himself at the expense of the other party. Besides, one charged with a crime scarcely ever acts naturally, and the testimony of a really innocent party accused of a crime might be of such a character and presented in such a manner as to create a strong suspicion of guilt. In addition to all this, the alleged accomplice was as accessible to the State as to the defendant. Under the doctrine of *State* v. *Rosier,* 55 Iowa, 517, no presumption arises against the defendant on account of his failure to call Hilliard as a witness. We unite in the opinion that the court erred in giving this instruction."

Counsel for defendant in error admit that if an instruction such as that given in the Iowa case had been given in this case it would have been prejudicial error, but endeavor to point out a distinction between an instruction laying down a principle of law and a statement of fact made by counsel in argument. We are unable to perceive any distinction between the situation here presented and that in *State* v. *Cousins, supra.* Objection was made to the statement of Hayes in the presence of the jury, and an argument followed as to the right of the State's attorney, under the law, to make this argument. After the authorities requested by the court had been presented he overruled the objection, thus holding that the argument was proper. When objection was made to the argument of Bell the court overruled it, and the jury were thereby given to understand that he had correctly stated the law. The jury were thus told, as plainly as though they had been instructed in writing, that it was the duty of plaintiff in error, under the law, to

call his co-defendants as witnesses, and that they had a right to consider that as a circumstance against him and to give it such weight as they deemed it entitled to. No duty devolved upon plaintiff in error to call anyone as a witness. It was his privilege to produce witnesses and to make a defense or not, as he chose. The duty devolved upon the State to prove his guilt beyond all reasonable doubt before the jury were warranted in convicting him. The duty did devolve upon plaintiff in error not to put it without the power of the State to produce any material witness, and if he did so the State had the right to show that fact as a circumstance against him. No such situation is presented here. To say that it was the duty of plaintiff in error, under the law, to produce witnesses who were equally accessible to the State and who were supposed to be in possession of facts having a bearing upon the truth or falsity of the charge against him would be placing a burden upon him that the law does not require or tolerate. Such a rule would be in conflict with the doctrine of the presumption of innocence. It is unfortunate that in a case involving so much time, labor and expense a prosecutor in his zeal to secure a conviction should permit himself to overstep proper bounds and by improper means attempt to create a conviction in the minds of the jury of the guilt of the defendant.

Defendant in error insists that plaintiff in error has been so clearly proven guilty that the error complained of could not have affected the result of the trial and the jury could not have returned a different verdict, and relies upon the rule applied in *People* v. *McCann,* 247 Ill. 130, *People* v. *Cleminson,* 250 id. 135, *People* v. *Burger,* 259 id. 284, and *People* v. *Strosnider,* 264 id. 434, to sustain the judgment. The rule applied in those cases has never been applied except where it clearly and conclusively appeared to the court, from the whole record, that without regard to the error committed the result must have been the same. In this case it would be impossible to determine by any recognized

standard the effect of this statement and the ruling of the court upon the jury. The jury were, in effect, told by the court that they should presume that plaintiff in error was guilty of the crime charged because of his failure to call his co-defendants as witnesses in his behalf. To hold that we can look into a record, under such circumstances as are here presented, and determine that a defendant was properly convicted upon the theory that the jury could have come to no other conclusion notwithstanding such error, would be to deny one accused of crime the semblance of a trial. To apply the rule invoked in this case would be to hold, in effect, that once the court is convinced of the guilt of a defendant he is no longer entitled to the protection of the constitution or the law and his most sacred rights may be disregarded with impunity. There is a vast difference between admitting improper evidence in a case where the guilt of the accused has been otherwise clearly and conclusively proven, and a case where a defense is made in good faith which, if believed by the jury, must result in acquittal, and where the court holds, as a matter of law, that it is the duty of the accused to produce his co-defendants as witnesses and permits the jury to indulge in the presumption of guilt because of his failure to do so.

The statements of counsel above set out, together with the rulings of the court thereon, constitute prejudicial and reversible error.

W. H. Holly, one of the assistant State's attorneys of Cook county, was permitted, over objection, to make the following statement in his argument to the jury: "There is not a word of testimony given here except over the objection of these defendants. Have they come in here in the attitude of gentlemen who are willing to lay their cards on the table and say to the gentlemen of the jury, 'We want you to see these transactions and scrutinize them in detail; we are willing to show everything we have done in this bank and let you be the judge of whether we are guilty

or not?' No; but they try to exclude every piece of testimony bearing upon the guilt of this defendant." This statement was improper and the objection to it should have been sustained. It is the province of the court to pass upon the admissibility of evidence, and it is no concern of the jury whether an objection has been made to the admission of the evidence and whether such objection has been overruled or sustained. It is the duty of the jury, under the instructions of the court, to consider only such evidence as has been admitted, and they have no concern with the rulings of the court on the admission of evidence during the progress of the trial. In *McDonald* v. *People,* 126 Ill. 150, counsel stated to the jury, after a statement had been excepted to, "The court thinks I am right or he would tell me to vary my line of argument." In holding that this was error we said: "It is a proposition too plain to admit of argument, that the jury had nothing to do with the force or effect or the office of an exception that might be taken by counsel during the trial."

During the argument counsel for the State also referred to the fact that a change of venue had been taken from Cook county to Grundy county and that plaintiff in error had not the courage to face the many persons he had defrauded in Cook county. Generally it is error for the prosecution to refer to the fact that a defendant has secured a change of venue from the county in which the crime is alleged to have been committed. The court determines, after a showing has been made, whether or not a change of venue should be granted, and it must be presumed when a change is granted that such action was necessary in order to secure for the defendant a fair trial. In this instance, however, plaintiff in error has no grounds for complaint. His counsel in their arguments referred to the fact that a change of venue had been taken, and the remarks of counsel for the State constitute legitimate reply to that argument. Counsel having opened this subject for discussion

280 — 4

themselves cannot be heard to complain that the State saw fit to answer their argument.

Other statements made by counsel for the State are complained of, but we perceive nothing further in the arguments that was not warranted by the evidence.

Before the change of venue was secured a general motion to quash the indictment was overruled by the criminal court of Cook county and plaintiff in error entered a plea of not guilty. After the cause had been transferred to the circuit court of Grundy county, and without withdrawing the plea of not guilty, plaintiff in error interposed a motion to quash the indictment on the specific ground of irregularity in organizing the grand jury which returned the indictment. This motion was properly overruled. It is a well settled rule that a motion to quash an indictment after plea cannot be considered unless, upon leave obtained, the plea is first withdrawn. *McKevitt* v. *People,* 208 Ill. 460; *People* v. *Strauch,* 247 id. 220; *People* v. *Jones,* 263 id. 564.

While the cause was still pending in the criminal court of Cook county a motion to require the State to furnish a bill of particulars was allowed and a bill of particulars was furnished. After the cause was removed to the circuit court of Grundy county plaintiff in error entered a motion to require the State to furnish a more specific bill of particulars. The action of the court in denying this motion is assigned for error. Whether or not the State shall be required to furnish a bill of particulars in a particular case, and the character of such a bill, rests in the sound legal discretion of the trial court. (*DuBois* v. *People,* 200 Ill. 157; *People* v. *O'Farrell,* 247 id. 44; *People* v. *Gray,* 251 id. 431.) It is only in cases where it is clear that there has been an abuse of this discretion that the denial of such a motion is held to be error. It does not appear that plaintiff in error was surprised or in any way injured on the trial by the failure to furnish a more specific bill of particulars. The motion set out in great detail the informa-

tion desired, and was, in effect, a demand that the State disclose the evidence it proposed to produce. We are of the opinion there was no abuse of the discretion of the court in denying this motion.

The court did not err in refusing to require the State to elect upon which count or counts it would seek conviction. It is contended by plaintiff in error that various offenses are charged in the different counts of the indictment and that these offenses are distinct and separate from each other and do not arise out of the same transaction, and that the State should have been put to an election. Plaintiff in error and his co-defendants were charged with conspiracy. While in the several counts separate and distinct objects of the conspiracy are alleged one general conspiracy is charged, and the various acts which it is alleged in the several counts plaintiff in error and his co-defendants conspired to commit are all parts of the same general conspiracy. The right to require the State's attorney to elect upon which count of an indictment he will rely for conviction is confined to cases where the offenses charged in the different counts of the indictment are distinct from each other and do not arise out of or form parts of the same transactions. *Goodhue* v. *People,* 94 Ill. 37; *Andrews* v. *People,* 117 id. 195; *Herman* v. *People,* 131 id. 594; *People* v. *Warfield,* 261 id. 293.

During the selection of the jury on at least two occasions the State tendered plaintiff in error four jurors, and upon examination of the panel by plaintiff in error a juror in each instance was excused for cause, and the court thereupon required plaintiff in error to fill the panel. It is contended that the State was bound to tender the defense a panel of four competent and qualified jurors, and if, after tender, it was disclosed that any member of the panel was disqualified for cause, the examination then shifted to the State to fill the panel. The court did not err in this regard. Section 21 of the act concerning jurors provides that the

jury shall be passed upon and accepted in panels of four by the parties, and section 23 provides that the act applies to proceedings in both criminal and civil cases. All that is incumbent upon the State is to secure a panel of four that is acceptable to it and it may then tender them to the defense. It may be that upon the examination on the part of the State it is disclosed that one of the jurors in the panel is disqualified for cause, but the State has the right, if it sees fit, to waive its privilege to challenge for cause and accept the juror.

During the cross-examination of plaintiff in error the assistant State's attorney made numerous remarks to the witness which are complained of. These remarks were improper and of a nature calculated to discredit plaintiff in error, and had they been unprovoked their effect upon the jury would be a matter of grave consideration. Many of them were objected to and the objections sustained, and in other instances the objections were not ruled upon. The plaintiff in error was largely responsible for many, if not all, of the remarks made by the cross-examiner. He volunteered statements, criticisms and suggestions that were calculated to irritate counsel. While counsel should have ignored these voluntary statements of the witness and should have refrained from participating in conduct which, to say the least, was unseemly, we are not disposed to hold, under the circumstances, that any error was committed in this regard.

Numerous objections were made to the introduction of testimony which it is claimed was improperly admitted. James B. McDougal, governor of the Federal Reserve Bank of Chicago and formerly examiner for the Chicago clearing house, was called as a witness for the State, and during his testimony concerning his examination of the LaSalle Street National Bank the following testimony was admitted:

Q. "Besides the question of Mr. Munday's inexperience in city banking, was there anything else entered into

the knowledge which you acquired at that time and that you acquired with reference to this examination? (Objected to.)

A. "The facts were, at the time, as indicated by my report, showing a number of transactions which were of a questionable character and such as would warrant me in questioning the integrity of the management. All these things entered into that. (Motion to exclude answer denied.)

Q. "And what individuals were within the range of this answer?

A. "The management of that bank,—the LaSalle Street National,—was largely in the hands of one man. I think my remarks would apply to him. That was vice-president Mr. Munday."

This was improper and it was error to admit it. The court some days later during the trial excluded it, and the plaintiff in error contends that this did not cure the error. Inasmuch as the judgment must be reversed on other grounds it is unnecessary to determine whether the error was cured by the exclusion of this testimony later.

William C. Niblack, receiver of the LaSalle Street Trust and Savings Bank, testified to his inability to collect certain securities which were among the assets of that bank and as to the value of these securities when he took charge of the affairs of the bank as receiver. Other witnesses also testified as to the value of certain securities among the assets of the various banks involved and named in the indictment after the failure of these institutions. The principal testimony given by these witnesses consists of statements of their inability to collect these securities after the failure of the banks. It is the contention of plaintiff in error that these witnesses disclosed that they had no knowledge of the solvency of the makers of the securities in question, and especially at the time the securities were taken by these various banks. Evidence of a neglect or refusal of the maker

of a note or other obligation to pay it according to its terms
is proper upon the question of value, as tending to show
inability of maker to pay. (*Booth* v. *Powers,* 56 N. Y. 22.)
This testimony applied to a great number of securities ow-
ing by various individuals, firms and corporations. The
fact that all these securities were found to be worthless at
the time of the failures of these banks had a tendency to
prove that they were of little or no value when they were
taken, especially since the banks involved had been doing
business a comparatively short time. These securities were
held principally by the LaSalle Street Trust and Savings
Bank, which was the successor of the LaSalle Street Na-
tional Bank. The national bank was organized in May,
1910. The trust and savings bank, which succeeded it and
took over its assets and assumed its liabilities, was organ-
ized as a State bank in October, 1912, and closed its doors
June 12, 1914. The testimony was properly admitted. In
any event, plaintiff in error is in no position to raise this
question as no specific objection was made when the evi-
dence was offered, based on the ground that it related to
the wrong time. *Chicago Title and Trust Co.* v. *Core,* 223
Ill. 58.

It is contended that the court admitted secondary evi-
dence of many matters without a proper showing before
permitting such evidence to be introduced. The witness
Niblack testified with reference to the existence of certain
mortgages and loans and the appointment of a receiver for
the Illinois-Louisiana Land Company; to the contents and
amounts of certain checks drawn by plaintiff in error which
were never collected; that the bank building of the LaSalle
Street Trust and Savings Bank and lot stood on the books
of the bank at $462,000, and that the property was mort-
gaged for $200,000 and had a mechanic's lien for $46,200
against it. Frank M. Spohr, who was the auditor and
assistant cashier of the LaSalle Street Trust and Savings
Bank, also testified to the amount at which the banking

house was carried on the books and to certain checks of plaintiff in error and their amounts. To this testimony only general objections were interposed. In order to raise the question that the evidence introduced is not the best evidence a specific objection must be interposed.

McDougal testified that he had made a written report of an examination he had made of the LaSalle Street National Bank, and after an examination of the abstract of that report testified to the condition of the bank at the time of that examination. Lathan T. Souther, receiver and trustee in bankruptcy for C. B. Munday & Co., used a memorandum while on the witness stand when testifying concerning the assets of the company for which he was receiver and trustee. Spohr also used a memorandum while testifying. It is contended by plaintiff in error that these witnesses were permitted, over objection, to read from the memoranda they had and thus improperly impart their contents to the jury. An examination of the record discloses that each of these witnesses used the memorandum he had for the purpose of refreshing his recollection, and that he testified, after an examination of the memorandum, from his recollection as to the facts.

In his testimony as to the assets of C. B. Munday & Co., Souther testified from reports that he had personally made in the bankruptcy proceedings as well as from his personal recollection outside of these papers. Spohr testified as to certain assets which were taken over by the LaSalle Street Trust and Savings Bank from the LaSalle Street National Bank in October, 1912. In his examination he stated he was using a memorandum that had been furnished him from the State's attorney's office, but that he had examined it and compared it with the books of the bank and found it to be absolutely correct. In using this memorandum and one that he had made up himself he made comparisons and summaries of the various transactions disclosed by the records which were afterward introduced in

evidence.   W. H. Tholen, formerly cashier of the Illinois
State Bank, also gave a summary from books with which
he had been familiar as cashier of the Illinois State Bank
and which were in evidence.   The testimony of these wit-
nesses was properly admitted under the holding in *People*
v. *Gerold,* 265 Ill. 448.

Carbon copies of certain letters which were found
among the records of the LaSalle Street Trust and Savings
Bank were admitted, and it is insisted that this was error
in the absence of an accounting for the originals.   The car-
bon copies constitute a part of the records of the bank which
were in the hands of the receiver and were admissible as
original records of the bank.

Spohr testified from the records of the bank concerning
alleged kited checks of plaintiff in error, although he tes-
tified he had never seen the checks themselves and knew
nothing about them except what appeared from the records
of the bank.   He also expressed his opinion as to the
amount of loss sustained by the bank by these transactions.
This testimony was proper, as the witness was thoroughly
familiar with the books of the bank and was testifying to
a summary of these transactions as disclosed by the records
of the bank which were in evidence.   This witness also
testified to the giving of notes, for $125,000 each, by him-
self and nine other parties, in connection with the sub-
scriptions made to the capital stock of the LaSalle Street
Trust and Savings Bank, and also concerning a check for
$1,250,000 which was drawn upon the Central Trust Com-
pany by the cashier of the LaSalle Street National Bank.
It is objected that the notes themselves constituted the best
evidence of their existence, and that the testimony in re-
gard to the check was improper as the witness was not
present at the time of the transaction and had no personal
knowledge of that matter.   Spohr testified from his own
personal knowledge concerning the transaction involving the
execution of these ten notes for $125,000 each.   As to the

matter of the check, Charles G. Dawes, president of the
Central Trust Company, afterward testified fully concern-
ing this check without objection.   Spohr also testified that
certain lists which he had, corresponded with the books of
the bank.   It does not appear that any part of his testimony
was based upon these lists but it appears that he was testi-
fying from recollection.

It is objected that it was improper to permit McDougal
to testify to the action taken by the clearing house commit-
tee in reference to the conduct of the LaSalle Street Na-
tional Bank and to resolutions adopted by it.   It does not
appear from the testimony of this witness whether or not
he was present at the time the resolutions were adopted.
He did not know of his own knowledge whether the reso-
lutions which had been adopted by the clearing house com-
mittee relating to the conduct of the LaSalle Street National
Bank had been delivered to the plaintiff in error, but James
B. Forgan, a member of the clearing house committee, tes-
tified that a copy of the resolutions had been mailed by
registered mail to plaintiff in error, who acknowledged re-
ceipt thereof by a letter which was introduced in evidence.
Another letter signed by plaintiff in error and four other
persons who constituted a committee on behalf of the La-
Salle Street National Bank was admitted in evidence, in
which all the essential and material portions of these reso-
lutions were quoted and commented upon.   There was no
error in admitting this testimony given by McDougal.

Charles E. Ward, one of the directors of the LaSalle
Street Trust and Savings Bank, testified in regard to loans
he passed on as a director of the bank.   This was primary
evidence of the fact testified to and was not subject to the
objection that it was not the best evidence.

E. J. Potts, who was employed in the credit department
of the LaSalle Street National Bank and the LaSalle Street
Trust and Savings Bank, and who was also vice-president
of the Ashland-Twelfth State Bank, testified that plain-

tiff in error voted a majority of the stock of the Ashland-Twelfth State Bank. This was primary and not secondary evidence of the fact testified to, and is not subject to the objection that the record of the meeting was the best evidence of it. This witness also testified to items contained in the liability ledger of the LaSalle Street Trust and Savings Bank. This ledger was afterwards introduced in evidence, but, in any event, it appears that the ledger was only referred to for the purpose of refreshing the memory of the witness.

John H. Rife, a bank examiner, testified concerning the condition of the LaSalle Street Trust and Savings Bank at the time he made an examination. It is objected that this was improper, as it was disclosed that the witness had made a written report which was on file in the State Auditor's office. The witness did not testify to the contents of his report and his testimony was competent. This witness also testified to the number and amount of the bonds and the trust deed of the Illinois-Louisiana Land Company, and it is objected that the documents themselves are the best evidence. The same facts testified to by this witness are shown by receipts for these bonds signed by plaintiff in error and admitted in evidence.

Roy O. Farquhar, cashier of Sidney Long & Co., did not pretend to testify from books, as counsel contend, but testified from his recollection concerning the execution of notes aggregating $100,000 and to the depositing in a certain bank of about $300,000 to the account of Sidney Long & Co. This was primary evidence and was competent.

James B. Forgan, a member of the clearing house committee, testified to the action of that committee. It was objected that this was improper, as plaintiff in error was not present when this action was taken. The action testified to was in regard to the LaSalle Street Trust and Savings Bank, and plaintiff in error, as appears from the record, was afterward fully advised what had been done. In his testimony Forgan did not testify that he drew certain

conclusions and did not give his opinion as to the character of the business conducted by the bank, but testified that he stated to the plaintiff in error, in a conversation with him in reference to the conduct of the bank, that he had drawn such conclusions and had expressed his opinion as to the manner in which the bank had been conducted. It was complained that this witness was permitted to relate a conversation with the mayor of Chicago with reference to the deposit of city funds in the LaSalle Street Trust and Savings Bank. This matter was brought out on the cross-examination of this witness by counsel for plaintiff in error, and he cannot now complain that on re-direct examination the whole of the conversation was brought out.

Joseph O. Morris, who was interested in the Rosehill Cemetery Company, identified a blank form of deed or contract which he testified was used in the regular course of business of the cemetery company, and also testified concerning a resolution which was in writing and was a matter of record. The blank form identified by this witness and admitted in evidence constituted primary proof, and the resolution testified to was also admitted in evidence.

William E. Trautman, who was president of the Southern Traction Company, was permitted to give in detail the terms of a contract between the Southern Traction Company and one Mepham relative to construction work to be done by Mepham for the company. Objection was made that this was not the best evidence. This objection should have been sustained. The testimony was material as showing the connection of the Lorimer-Gallagher Company, which was a sub-contractor with the Southern Traction Company through Mepham, and as explaining the action of Lorimer in disposing of the bonds of the Southern Traction Company to the LaSalle Street Trust and Savings Bank. The contract itself should have been offered in evidence.

Other contentions are made that the court improperly admitted secondary evidence, but we do not deem them to be well grounded.

It is contended that various witnesses were improperly allowed to testify from memoranda and notes made by others and concerning matters about which the witnesses had no personal knowledge. As has already been noted, Spohr testified from a memorandum that had been furnished him by the State's attorney's office. He further testified that he compared it with the books and found it to be correct and used it to refresh his recollection. This same witness, who was auditor of the LaSalle Street Trust and Savings Bank, gave a summary from the books of that bank which were in evidence. This was proper. McDougal used the abstract of his report on the condition of the LaSalle Street National Bank to refresh his recollection. We do not find the record subject to this criticism.

Plaintiff in error contends that the court erred in permitting the books in the hands of the various receivers of the institutions involved to be introduced in evidence. Plaintiff in error was interested in the Broadway State Bank, the Ashland-Twelfth State Bank and the State Bank of Calumet, and receivers of these institutions were permitted to produce all the books and records of these banks, as was also the receiver of the Southern Traction Company permitted to produce the books and records of that corporation. It is contended that this was a violation of the constitutional rights of plaintiff in error and that he was thereby required to give evidence against himself. This question has been determined against the contention of the plaintiff in error in a well-considered opinion in the case of *Wilson* v. *United States,* 221 U. S. 361. In that case it was contended that Wilson, who was president of the United Wireless Telegraph Company, was being deprived of his rights under the Federal constitution when he was compelled, as president, to produce the books of the corporation,

which contained matter that might tend to incriminate him. Wilson was served with a subpœna *duces tecum* to produce the books before the grand jury which was investigating alleged violations of the Federal laws by Wilson and other officers of the corporation. The contention in that case was that to require him to produce these books was a violation of the fifth amendment to the Federal constitution, which is, in effect, the same as section 10 of article 2 of our constitution on which plaintiff in error relies. The court there held that the privilege afforded by the fifth amendment to the Federal constitution does not protect an officer of a corporation in resisting the compulsory production of records of such corporation which are in his possession because the contents may tend to incriminate him. In the opinion the court goes fully into the identical question presented here, and holds that while one cannot be compelled to produce any of his private books or papers which may tend to incriminate him, he cannot refuse to produce the books or papers of a corporation of which he is an officer or in which he may be interested even though they may be in his custody and under his control, as they are not his private books and records but the books and records of the corporation. This case has been followed and approved in *Wheeler* v. *United States*, 226 U. S. 478, and *Grant* v. *United States*, 227 id. 74. The LaSalle Street Trust and Savings Bank and the other institutions involved were State institutions and subject to State supervision. Their records were *quasi* public in character. They were not the private property of plaintiff in error but were the property of the respective corporations. The court did not err in admitting the books and records in the possession of the respective receivers in evidence.

It is contended that the court improperly admitted testimony as to the corporate existence of the Cemetery Securities Company, the Builders Bond Company, the Huttig Manufacturing Company and the Southern Traction Com-

pany. The record discloses that the Cemetery Securities Company had a president, vice-president and treasurer, and counsel for plaintiff in error elicited the fact, on cross-examination of the witness Morris, that this company was a Delaware corporation with a capital stock of $600,000, divided into 6000 shares. It does not appear from the abstract of the record wherein it was a material matter whether or not the Builders Bond Company was a corporation. The record discloses as to the Huttig Manufacturing Company that H. W. Huttig was president, and the company had shares of common and preferred stock and was engaged in the manufacture of sash and doors, and this was sufficient proof of the existence of a corporation by user. As to the Southern Traction Company, the witness Trautman testified, without objection, that it was a corporation organized under the laws of Illinois and that he was the president.

A number of depositors of the Ashland-Twelfth State Bank and of the LaSalle Street Trust and Savings Bank were permitted to testify to the amount of their deposits at the time these banks failed and to the amount of dividends paid since those institutions had been taken over by receivers. The indictment alleges that plaintiff in error and his co-defendants named, and others to the grand jurors unknown, conspired to commit the acts alleged. During the course of the trial, and in response to a motion made by plaintiff in error, the State's attorney announced that certain of those referred to as unknown conspirators had become known and furnished a list of them, included in which list was Abraham Levin, who had been cashier of the Ashland-Twelfth State Bank. The witnesses who testified that they had been depositors in this bank all testified that they had been induced by Levin to open an account in that bank. This testimony tended to support the charge of a conspiracy to secure the money of the public, generally, by false pretenses and misrepresentations, and was proper. The depositors of the LaSalle Street Trust and Savings Bank

merely testified to the amount of their deposits and to the fact that the money was wholly lost. The books of the La-Salle Street Trust and Savings Bank were admitted in evidence and showed the total amount of deposits at the time the bank failed. It was conceded by counsel for plaintiff in error that these books correctly disclosed that fact and that no depositor had been re-paid. In view of this situation it was improper to permit the State to produce only a few of the depositors of the bank, having small deposits, to testify to the amount of their particular deposits and to the fact that they had never been re-paid. Such evidence could be of no assistance whatever to the jury in determining the guilt or innocence of the accused. The court should have excluded this testimony.

There were involved in this case various transactions in reference to institutions in which plaintiff in error, Huttig and Lorimer were interested as partners or stockholders. During the trial witnesses were permitted to state the interest of these defendants in these various institutions by designating them as Munday concerns, Huttig concerns or Lorimer concerns. It is insisted that this was error. The record conclusively shows, aside from these references of the various witnesses, the institutions in which plaintiff in error was interested and the institutions in which Lorimer and Huttig were interested. The references made by these witnesses were for convenience, only, and could not have been misunderstood, and were unobjectionable.

A. H. Hill, president of the A. H. Hill & Co. State Bank, testified to his dealings with plaintiff in error in the organization of that bank, of his deposits in the LaSalle Street Trust and Savings Bank, and of his purchasing securities from that bank. It is insisted that inasmuch as there was no loss to the A. H. Hill & Co. State Bank growing out of these transactions the testimony was immaterial and foreign to the issues. The transactions detailed by this witness had a bearing upon the offense charged against

plaintiff in error and his co-defendants and were properly admitted as showing intent and guilty knowledge.

It is objected that the statement of the assets and liabilities of the LaSalle Street Trust and Savings Bank admitted in evidence, and which was published in one of the newspapers in Chicago, is wholly different from the statement set out *in hæc verba* in the sixth count of the indictment, and that in this there was a fatal variance. It is a sufficient answer to say that no objection on the ground of variance was made when this statement was offered.

Complaint is made of various instructions given on behalf of the People. On the question of the credibility of plaintiff in error the court instructed the jury that although the plaintiff in error had a right to testify the jury were not bound to believe his testimony, but in considering the credit to be given to it they might take into consideration his interest in the case and "his desire to evade punishment for the crime with which he is charged." It was error to give this instruction. In *People* v. *Arnold,* 248 Ill. 169, an instruction was given which told the jury that they were not required to receive blindly the testimony of the accused, "but you are to consider whether it is true and made in good faith, or false and made only for the purpose of avoiding a conviction." In holding it was error to give this instruction we said: "The instruction had the effect to prejudice the testimony of the defendant by telling the jury they were not required to receive it blindly, with the intimation that it might be merely fabricated for the purpose of avoiding a just conviction." This instruction is even more objectionable than the instruction in the *Arnold case.* By the use of the word "although" the testimony of plaintiff in error was to some degree discredited, and the same objectionable features are contained in this instruction that were contained in the one given in the *Arnold case.*

A number of character witnesses were called on behalf of plaintiff in error, and the jury were instructed that such

evidence is permissible and to be considered as a circum-
stance in the case, "but a good reputation is no defense in
a criminal prosecution," the instruction concluding properly
that if the jury believed, from the evidence, that plaintiff
in error was guilty as charged, it was their duty to so find
notwithstanding the fact that theretofore he had borne a
good reputation. Without the sentence quoted the instruc-
tion was good and stated the law correctly but with that
sentence included the instruction was erroneous. Reputa-
tion is properly a part of the defense in a criminal prosecu-
tion if it is put in issue. It is true it is not a defense to
crime, but it is proper to be considered as a defense to a
criminal charge.

One of the instructions complained of is as follows:

"The court further instructs you that in determining the
question of the existence of a conspiracy you will take into
consideration the relations of the parties to one another,
their personal and business association with each other, and
all the facts in evidence, if any, that tend to show what
transpired between them at or before the time of the al-
leged combination as well as the acts performed by each
party subsequent to such alleged combination, if any, in re-
spect to the subject matter of the alleged conspiracy, and
from these facts and circumstances, and from all the evi-
dence in the case, you will determine whether a combination
in fact existed and whether such combination was illegal
in its inception or became that way any subsequent time."

Plaintiff in error contends that it was error to tell the
jury what they ought to or must take into consideration.
Instead of telling the jury they will take certain matters
into consideration they should have been told that they may
do so. In view of the closing argument of Hayes and Bell,
heretofore referred to, it was error to give this instruction,
as the jury, after hearing the statements of counsel as to
the failure of Lorimer and Huttig to testify and the ruling
of the court thereon, might well take this instruction to

280 — 5

mean that they must take into consideration the act of Lorimer and Huttig in not testifying in the case in behalf of plaintiff in error.

By another instruction the jury were told that it was not necessary for the State to prove each and every count in the indictment, but that if it proved any one or more of the counts beyond a reasonable doubt then it was their sworn duty to return a verdict of guilty. It is contended that this was error for the reason that the fourth count of the indictment was insufficient, and was, in effect, made a part of this instruction to the jury. The fourth count alleges that "C. B. Munday & Co. was a firm and co-partnership controlled by the said Charles B. Munday and in the management of which the said Charles B. Munday was actively engaged," and contains like allegations as to other concerns in which plaintiff in error and Lorimer were interested. The objection is that the count is not specific in charging when plaintiff in error and Lorimer were actively engaged in the various enterprises, the words "then and there" not appearing in the various allegations in the count. It is true, as plaintiff in error contends, that each count of the indictment, including the fourth, was virtually incorporated into this instruction, but as a part of an instruction this count would not be tested by the same rules as when tested by a motion to quash. This instruction was given after the evidence was in. The evidence disclosed that at the time the crime was alleged to have been committed plaintiff in error managed and controlled the firm of C. B. Munday & Co. and the other concerns in which it is alleged in the fourth count he was interested, and that Lorimer at that time was actively interested in the concerns which the fourth count alleges he controlled or was interested in. This instruction was not misleading and it was not error to give it.

The giving of other instructions is complained of, but we are of the opinion that they were properly given.

Complaint is made of the action of the court in refusing to give a number of instructions asked on the part of plaintiff in error. Plaintiff in error offered 272 instructions, of which over 200 were refused. The asking of this unusual number of instructions was entirely unnecessary and counsel were not warranted in imposing upon the court the task of passing upon them. The court would have been justified in refusing to consider them and in requiring counsel to present a reasonable number of instructions. On account of the unreasonable number of the instructions offered we will not review the action of the court in passing upon the instructions tendered by plaintiff in error and refused.

It is contended that the attitude of the court was apparently hostile to plaintiff in error, and that the method of conducting the trial and the events occurring during the trial were such as to prejudice his rights. Complaint is made of the action of the court in permitting representatives of various newspapers claimed to be hostile to plaintiff in error to take photographs of the jury, the defendant and the court, and in suspending the progress of the trial at different times to permit these photographs and moving pictures to be taken. It does not appear that any objection was interposed on behalf of plaintiff in error to the taking of the photographs and moving pictures. On the contrary, it does appear from the record that it was expressly consented to. Whether or not the parties consented to the taking of the photographs, and without regard to whether such acts were prejudicial, the court should not have permitted it. It is not in keeping with the dignity a court should maintain, or with the proper and orderly conduct of its business, to permit its sessions to be interrupted and suspended for such a purpose.

In support of the motion for a new trial a number of affidavits were filed to the effect that a large number of women were given seats on the rostrum beside the judge during the trial, and particularly during the arguments to

the jury. These affidavits are to the effect that the attitude of these women was hostile to plaintiff in error and that at times this hostility was openly demonstrated. Counter-affidavits were filed admitting that a number of women occupied the rostrum during the greater portion of the trial but denying all the other statements contained in the affidavits filed in support of the motion. Nothing appears in the bill of exceptions or the record except these affidavits which has a bearing upon this question. From the affidavits it is a controverted question of fact whether or not any demonstration was made by the women who occupied the rostrum with the court. If plaintiff in error desired to have this question preserved and passed upon he should have excepted to such demonstrations, if any, at the time they were made and should have procured the court to include a statement of the facts in the bill of exceptions. The court should not have permitted spectators to occupy the rostrum. While all trials are conducted publicly and ordinarily anyone has the right to attend the sessions of the courts, spectators should be confined to that part of the court room set apart for their use. They should not be invited, or permitted, to occupy positions that would tend to obstruct the orderly and dignified conduct of the business of the court or would afford them unusual advantage to convey to the jury indications of their approval or disapproval of the events of the trial as they transpired. The trial of a case should consist only of the sober investigation of the matters in issue. It is not to be regarded as an entertainment or in any sense as a festive occasion. The court should not permit the conversion of the court room into a picture gallery or the trial of a case into a show.

For the reasons given the judgments of the circuit and Appellate Courts are reversed and the cause is remanded to the circuit court for a new trial.

*Reversed and remanded.*

Mr. CHIEF JUSTICE CARTER, dissenting:

I cannot concur in the conclusion reached in this case. I do not think there was any error committed on the trial for which the case should be reversed. The chief, if not the only, error for which the cause is reversed is the statements made by counsel for the State in their arguments to the jury. The court permitted the State's attorney, over objection, to comment on the fact that the plaintiff in error's alleged co-conspirators, Lorimer and Huttig, were not called by him to testify in the case. It seems clear from this record that throughout the trial the plaintiff in error endeavored in many ways to get into the case his claim that the indictment was based on and the whole trouble grew out of a political persecution of Lorimer, but so far as he succeeded in getting matters of that kind before the jury that were not properly in the record it did not justify the State's attorney in making improper remarks on the same subject. Still, it is almost the universal rule, as shown by the authorities, that in considering an objection made by a party to a suit it is always pertinent to inquire whether such party himself induced or provoked the act or remark that he complains of.

No case in this State has been called to my attention on the right of the State's attorney to comment on the failure of the defendant to produce as witnesses co-conspirators who were indicted with him. It is the general rule that if a party has it within his power to produce a witness and does not do so, it is a subject of fair comment in the argument before the jury. The question here is whether that rule should apply in the case of parties indicted jointly with the defendant but not on trial. The statute forbids any comment by the State's attorney on the failure of defendant to testify, but that statute does not touch the question here under consideration. It is true that if plaintiff in error had brought Lorimer and Huttig to testify he could not have compelled them so to do had they claimed their privi-

lege on the ground that their testimony might tend to in-
criminate them. Under circumstances somewhat similar to
those found in this record, comment very like to that made
here was held proper in *People* v. *Yee Foo,* 89 Pac. Rep.
(Cal.) 450, *State* v. *Madden,* 170 Iowa, 230, and *McEl-
waine* v. *Commonwealth,* 142 S. W. Rep. (Ky.) 237.

If the State's attorney in this case had simply com-
mented on the fact that Lorimer and Huttig had not been
called to testify, under these authorities I think there could
be no question that such comment would not have been
error. But the State's attorney went farther than that. He
said to the jury, in substance, that it was the duty of plain-
tiff in error to call those two witnesses. I agree with the
opinion that the State's attorney did not state the law cor-
rectly on this point, but I do not think the jury were so
prejudiced by this remark as to require a reversal of the
case. In discussing this question the Appellate Court in its
opinion states that in criminal cases counsel for both par-
ties are permitted to read and argue the law to the jury;
that plaintiff in error in this case fully availed himself of
that privilege, and that it knew of no authority which held
that a mistaken view of the law expressed by the State's at-
torney in his argument to the jury should be held reversible
error. There is force in this argument of the Appellate
Court. This court said in *People* v. *Halpin,* 276 Ill. 363,
on page 380: "The plaintiff in error was denied none of
his constitutional or statutory rights. The errors were er-
rors of procedure, in the admission of evidence and in-
structing the jury. If the correction of the errors might
reasonably be expected to result in a different verdict this
judgment should be reversed. On the other hand, if the
jury, acting reasonably on the competent evidence, under
proper instructions, could have reached no other conclusion
than that of guilt, the judgment ought not to be reversed
so that a better record may be made on another trial,"—
and the court refused to reverse that case because of the

errors referred to.  By the same line of reasoning it seems
to me this judgment should be affirmed.  This court has
said :  "Where the result reached by a judgment is clearly
right it will never be reversed for errors which do not af-
fect the substantial merits of the case."  (*Wilson* v. *People,*
94 Ill. 299; *Johnson* v. *People,* 202 id. 53.)  Again :  "The
position assumed by counsel is, that if error is found in the
instructions the judgment must be then reversed whether
such error operates to the prejudice of the defendant or
not.  Such is not the law.  In many cases determined by
this court the contrary doctrine is announced.  * * *  He
[the defendant] cannot be heard to complain if an error is
committed that cannot operate to his prejudice.  Absolute
correctness of proceeding cannot be attained even in our
very best courts, and the establishment of any other rule
would render the administration of the criminal laws prac-
tically impossible."  (*Dacey* v. *People,* 116 Ill. 555; *Dunn*
v. *People,* 109 id. 635; *Glover* v. *People,* 204 id. 170.)
Again :  "To reverse for every trivial error, without regard
to whether it exerted an improper influence over the jury
or not, would render our Criminal Code practically inoper-
ative."  (*Lander* v. *People,* 104 Ill. 248;  *Ochs* v. *People,*
124 id. 399.)  Again :  "In cases where the evidence clearly
justifies the finding and it must have been the same had not
certain incompetent evidence been admitted, the error in its
admission will be no ground for a reversal."  (*DuBois* v.
*People,* 200 Ill. 157; *Jennings* v. *People,* 189 id. 320; *Peo-
ple* v. *Weston,* 236 id. 104;  *People* v. *Cleminson,* 250 id.
135.)  We have also said:  "A court of review will not
always hold improper remarks, although not approved, to
be reversible error where the evidence leaves no reasonable
doubt as to the guilt of defendant."  (*Mash* v. *People,* 220
Ill. 86.)  To the same effect see *Featherstone* v. *People,*
194 Ill. 325.

   It is difficult to lay down any general rule that will
apply in all cases by which we can say that a given case

should be reversed for error, and another case, when a very similar error has been committed, should not be reversed. In my judgment the chief aim to be kept in view in deciding a question of this kind is to find out whether, on the whole record, the accused has had a fair and impartial trial. It is practically impossible for any trial judge, no matter how learned and impartial he may be, to conduct any sharply litigated case for weeks, such as this case was, without committing some slight error in procedure, but every such error should not necessarily reverse the case or no judgments in such cases would be affirmed.

It is manifest from these decisions that the courts will not reverse when they believe that on the main issues involved the defendant has had a fair and impartial trial, even though there have been errors of procedure which the court can say have not affected the substantial merits of the case or when the proof clearly justifies the verdict and on the record there can be no reasonable doubt of the guilt of the accused. The difficulty arises, as it does in this case, in attempting to apply these general principles of law to the special facts of the case. Law is not an exact science, and it is impossible, with the varying facts and conflicting cases that come before courts of review, for all the members of this or any other court to agree always as to when substantial justice has been done. With the members of a court, as with juries, there is often an honest difference of opinion. In this case it seems to me that no fair question can be raised as to the guilt of the accused and that the errors committed during the trial of the case did not in any way prejudice the jury or affect the substantial merits of the case. In my judgment the guilt of the plaintiff in error was shown so clearly on this record that I cannot see how an impartial jury could have reasonably reached any other verdict on the competent evidence, and therefore I do not think that the improper remarks of the State's at-

torney in this case misled the jury or affected prejudicially the rights of plaintiff in error.

Mr. JUSTICE CARTWRIGHT, dissenting:

The plaintiff in error was proved guilty beyond any reasonable doubt by legitimate evidence unobjectionable in every respect.  Errors occurred upon the trial but no different verdict could be reached by the jury upon a consideration of the evidence.  If a judgment is not to be reversed on account of errors unless it is shown that a different result can be or ought to be expected upon another trial this judgment should be affirmed.

Mr. JUSTICE CRAIG, dissenting:

I concur in the dissenting opinion of Mr. Chief Justice Carter.  There is a conflict in the authorities as to whether comments by the State's attorney on the failure of a defendant in a criminal case to produce his co-defendants as witnesses constitute error which is ground for reversal. The reason for this conflict is that every case must be decided ultimately on its own peculiar facts and the law applicable thereto.  In the very nature of things, remarks or statements made in the presence of the jury or arguments of the State's attorney that would be highly prejudicial in one case would be entirely harmless in another. ' In any case the questions to be determined are, first, are such statements improper; and second, if improper, are they prejudicial.  The reasonable meaning of the statement that it was the duty of plaintiff in error to call his co-defendants is, that it was a duty the plaintiff in error owed himself in properly presenting his defense, as distinguished from a legal duty or obligation on his part, to call them to testify. In this case the plaintiff in error moved for and obtained a separate trial and a change of venue to another county. Thereafter, so far as his trial was concerned, under the circumstances, any comment on his failure to call his co-

defendants as witnesses was the same as commenting on a failure to call any other material witness presumably under his influence or control, for it must be conceded that these co-defendants, who had been actively associated with him in his banking operations, were material witnesses, and they, better than anyone else, could by their testimony throw light on the transactions of the plaintiff in error which are charged to have been criminal. In this connection I think the true rule is laid down in *People* v. *McGarry*, 136 Mich. 316, in which it is said, on page 328 of the opinion: "There are many cases which justify comment upon the failure of a party to produce particular witnesses, and the rule extends to criminal cases. (3 Rice on Evidence, 29; *State* v. *Ward*, 61 Vt. 153; 17 Atl. 483.) It is not an unqualified right and depends upon the circumstances of the case. We think it applies to a deposition taken by the party and not used, and to accomplices and other witnesses within their control or with whom they are or have been closely associated, especially where such witnesses are in a position to speak on matters damaging to such party, already in evidence.—1 Starkie on Evidence, 34; 3 id. 487. See 2 Ency. of Pl. & Pr. p. 714, and notes, where cases are cited, and our own cases of *Gavigan* v. *Scott*, 51 Mich. 373; 16 N. W. 769; *Cook* v. *Insurance Co.* 86 Mich. 554; 49 N. W. 474." To the same effect as to comments on the failure of a defendant in a criminal case to produce witnesses which he can produce are *State* v. *Shelly*, 100 Minn. 110; *Commonwealth* v. *Weber*, 167 Pa. St. 153; *People* v. *Honey*, 92 N. Y. 554; *Hopson* v. *State*, (Ark.) 180 S. W. Rep. 485.

In this State no comment or reference can be made to the failure of a defendant in a criminal case to testify, because of the statute in that regard, but there is no statute which forbids comment in reference to the failure of a co-defendant to testify or be called as a witness by defendant.

(

I do not think there is any good reason, under the facts of the present case, why those who were co-defendants with plaintiff in error should be considered as other than mere witnesses.  If this is correct, then, as a matter of law, it was not error for the State's attorney of Grundy county to make the statement he did, and the propriety of the statement of the assistant State's attorney of Cook county is amply supported by the above authorities.  The effect of such remarks is entirely conjectural, and it would certainly seem, from the length of the trial and all the circumstances shown by the record, that the prosecution was conducted fairly and according to law and the plaintiff in error was given every opportunity to present his defense and that none of the matters complained of can be said to constitute prejudicial error sufficient to justify a reversal.  There are other considerations that far outweigh such alleged errors in the trial.  There was ample proof to support the verdict and judgment against the plaintiff in error.  The criminal acts with which he was charged involved several banks and resulted in enormous losses to hundreds of stockholders and thousands of unsuspecting depositors in those institutions. While there was no question about the result or effect of such transactions, it was difficult and expensive for the People to prove that they were criminal and that the plaintiff in error was guilty as charged.  It would be most extraordinary if some errors had not been made in the course of such a long-drawn-out trial.  On the whole the plaintiff in error had a fair trial in the circuit court, and the judgment of that court has been affirmed by the Appellate Court after a full consideration of the case, as shown by the opinion of that court.  In my opinion there was no prejudicial error or error sufficient to justify a reversal, and the judgments of the circuit and Appellate Courts should not be reversed because of slight remarks of counsel that in all probability did not in any way affect the result.