(No. 45275.–

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. JAMES BUTLER, Appellant.

*Opinion filed September 17, 1974.*

Robert H. Aronson, of Chicago, and John L. Sobieski, Jr., of Nashville, Tennessee, for appellant.

William J. Scott, Attorney General, of Springfield, and Bernard Carey, State's Attorney, of Chicago (James B. Zagel, Assistant Attorney General, and Patrick T. Driscoll, Jr. and Linda West Conley, Assistant State's Attorneys, of counsel), for the People.

MR. CHIEF JUSTICE UNDERWOOD delivered the opinion of the court:

James Butler was indicted for murder and three counts of armed robbery. A Cook County circuit court jury found him guilty on two of the armed robbery counts

and on the murder charge, recommending death as the murder penalty. The trial court imposed concurrent terms of 15 to 40 years imprisonment on the armed robbery charges and imposed the recommended death sentence for the murder. Our Rule 603 provides a direct appeal here in death-sentence cases. 50 Ill.2d R. 603.

On October 21, 1969, a man entered the waiting room of the Ram Tool Corporation carrying a music case. He sat briefly in the waiting room, withdrew a sawed-off rifle from the case, entered the main office area and announced a holdup. Employees were instructed to lie on the floor and place their money on the floor beside them. The man then entered a business machine room adjacent to the main office area. The murder victim, unaware of the holdup in progress, entered this room from his private office and was fatally shot by the armed robber. The man then returned to the main office, picked up money put on the floor by the employees and fled.

In January, 1970, defendant was arrested for an unrelated homicide. During the investigation, police received information on the homicide at the Ram Tool Corporation, and arrested defendant for that murder also. A lineup was arranged for the same day. Four Ram Tool employees viewed the lineup. Two employees who had viewed the robber in the general office area identified defendant in the lineup as the armed man who had been in their office. A third employee who had viewed him in the business machine room identified defendant as that armed man. This employee had looked directly in his face and fallen to the floor when a shot passed close to her. As she fell she saw the murder victim fall. A fourth employee who had also viewed the man in the business machine room was unable to identify defendant positively. After the lineup, defendant confessed that he had been looking for a place to rob and that he had shot the victim when the victim lunged at him.

At trial several additional witnesses who had been

present at the robbery testified but were unable to identify defendant. Another witness who had not viewed the lineup, nor identified defendant by photograph, did identify defendant at trial. In addition, a truck driver who was in the vicinity of Ram Tool Corporation on the day and at the time in question, testified to seeing defendant run across a vacant lot and run in front of his truck. The driver braked the truck to avoid hitting defendant, and observed a gun in defendant's hand. The truck driver, after the incident, described defendant to police and identified him by photograph. In addition to the occurrence witnesses, two police officers testified as to defendant's oral confession. The State's case was primarily based on the positive identification testimony of four occurrence witnesses, the testimony of the truck driver who saw the fleeing defendant at close range and defendant's own confession. Defendant, as the sole defense witness, testified in his own behalf that he was in New Orleans, Louisiana, on the date of the offense and that he did not commit the crimes. Defendant denied making any statements to police officers and denied that he was ever advised of his constitutional rights.

Defendant urges that he was denied due process of law in that evidence of his arrest for an unrelated homicide was admitted at trial, improper and irrelevant cross-examination was used to establish his bad character and his appointed counsel's remarks in closing argument discredited his alibi testimony. He argues that the combined effect of these errors requires a new trial.

Prior to the appearance of the arresting officers at trial, the defense moved that the officers be precluded from testifying that defendant had been arrested originally pursuant to an unrelated murder investigation, urging that such information would prejudice the jury. The prosecution assured the court the officers would not testify as to the nature of the offense, but only that the initial arrest was on a separate, unspecified charge. The trial court

agreed that the State could show that defendant had been arrested for another offense to explain why he was in custody when no victim of the Ram Tool incident had yet identified him, but cautioned the State not to bring out the reason for that arrest.

Thereafter, one of the arresting officers proceeded to testify concerning the first arrest on an unspecified charge and the second arrest for the murder in the Ram Tool robbery. That officer, however, identified himself as a homicide investigator and identified his work area as "Area 4, Homicide." He testified that he arrested defendant, and that defendant was taken to "Area 4 Homicide Unit"; that defendant was removed to central detention facilities but was returned the same day to "Area 4, Homicide" and arrested for the murder in the Ram Tool case. Reference to Area 4 and defendant's original processing there was mentioned by the prosecution in closing argument. It is, of course, possible that from these unnecessary references to "Homicide" and "Homicide Unit" some jurors may have concluded that defendant had been originally arrested for another murder, but it seems unlikely and is by no means certain that they did so. While the fact of defendant's arrest was admissible, we agree with defendant and the trial judge, that, in the circumstances of this case, any reference, direct or indirect, to the nature of the crime for which that initial arrest occurred was unnecessary and undesirable. We are not persuaded, however, that the possibility of one or more jurors concluding from these vague and indirect references that defendant had been initially arrested in connection with a different murder could have affected the guilty verdict. *People v. Tranowski,* 20 Ill.2d 11, 16-17.

A somewhat more serious question arises from the cross-examination of defendant by the prosecution. Seeking to discredit defendant's testimony relating to his presence in New Orleans with a woman named Ducksworth at the time of the murder and robberies, the State

questioned him extensively regarding the details of the trip, establishing that he had lived with the Ducksworth woman in her apartment until his return to Chicago. However, the State also persisted in inquiring as to his living arrangements both prior and subsequent to the claimed New Orleans trip. By that questioning, objected to by defendant but permitted by the court, it was made known to the jury that defendant had lived with a Marie Freeman before leaving Chicago and with a Hester Walker and, later, again with Marie after his return.

The only apparent purpose of questions which disclosed that defendant had cohabited with the Walker and Freeman women was to demonstrate to the jury that defendant was of bad moral character. While proper evidence of reputation for truth and veracity would have been admissible (*People v. Miller,* 13 Ill.2d 84, 108; *People v. Bakutis,* 377 Ill. 386, 390), this questioning was clearly improper and defendant's objections to it should have been sustained. We do not agree, however, that the error in failing to exclude it necessitates a retrial. The positive identification testimony of four eyewitnesses and defendant's confession are persuasive evidence of guilt, and, even if defendant's complaints of error be thought to reach constitutional dimensions, we have no hesitation in stating our belief that the error was harmless beyond a reasonable doubt insofar as the jury's determination of guilt was concerned. (*Chapman v. California,* 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824; *People v. Gill,* 54 Ill.2d 357, 368-9.) Since the death sentence must be vacated for other reasons, we need not consider the possible influence of this evidence thereon.

Defendant complains of the following portions of his court-appointed attorney's closing argument to the jury:

> "The first witness that the State called was Donald Graves. *** He was their witness and they vouched for him.
>
>         * * *

Now, the defendant took the stand. His defense was simple and it may or may not have been convincing to you. We told you at the outset, when we were selecting the jury, that the assistant State's Attorneys were appointed by the State's Attorney's office to prosecute this case and we were appointed by the court to defend it.

'He wasn't there at Ram-Tool, I was down in New Orleans.'

I came to present the Defendant's case and to challenge the state's case. I don't vouch for it. He said he was in New Orleans.

The State's Attorney brought out that the man was unemployed \*\*\* I don't know whether he looked hard to get a job or he didn't \*\*\*. Maybe it was a phony offer, I don't know. The fact is he testified that he went down to New Orleans. For whatever his reasons were, that's his business, no concern of ours here."

Defendant urges the effect of the quoted portions of the argument was to discredit in the minds of the jurors his testimony that he had gone to New Orleans to obtain employment on a fishing boat and apparently arrived too late, and that he was thereby denied a fair trial in violation of the requirements of due process. While it is not clear in the context of this record whether the complained-of argument was thought by counsel to serve some strategic purpose or was simply inartfully stated, we do not agree that its necessary result was to deny defendant a fair trial. The argument, with the exception of the quoted portion, was competently done. It focused upon and vigorously attacked the weaker aspects of the State's case, and, when viewed in its entirety, it cannot be said that "substantial prejudice results therefrom, without which the outcome would probably have been different." *People v. Gill,* 54 Ill.2d 357, 367.

While we do not reverse the judgment in this case because of the erroneous cross-examination earlier discussed, we are seriously concerned with the frequency of similar conduct by both prosecution and defense counsel appearing in the transcripts of trial proceedings. While we are aware that there are many evidentiary questions of

relevancy and propriety that are not clear-cut and that mistakes by counsel are inevitable, it would appear that the prosecution in this case deliberately engaged in improper questioning in regard to defendant's living arrangements with women to whom he was not wed, the only apparent purpose of which was to establish, by impermissible methods, defendant's bad moral character. Similar but perhaps more reprehensible conduct has appeared in other cases in which questions implying unfavorable conduct by a witness are asked by counsel who apparently have not a shred of evidence to suggest such conduct has actually occurred, but who inquire of the witness regarding it seemingly in the hope that the witness will be damaged in the eyes of the jurors. Such tactics have no place in the search for truth which is the objective of cross-examination and of the trial itself. While we are reluctant to reverse judgments where such improprieties seem not to have affected the verdicts, our prior criticisms seem to have had little effect so long as the judgments are not reversed. Consequently, we have concluded that disciplinary action against offending counsel may be the only effective deterrent. So that counsel may be fore-warned, we here announce our intention, in reviewing future trials, to refer to the Disciplinary Commission for appropriate action those members of the bar responsible for conduct of the type herein referred to.

The death sentence imposed upon defendant cannot, under *Moore v. Illinois,* 408 U.S. 786, 33 L. Ed. 2d 706, 92 S. Ct. 2562, be imposed. Accordingly the judgment of the Cook County circuit court is affirmed as to the armed robbery charges; the judgment of conviction is affirmed on the murder charge and the death sentence is vacated and the cause remanded to the circuit court of Cook County for the imposition of a sentence other than death.

*Affirmed and remanded, with directions.*