THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOSEPH T. McSHAN, Defendant-Appellant.

(No. 60888;

First District (2nd Division)—October 7, 1975.

Irwin L. Frazin, of Chicago (Patricia Unsinn, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Donald M. Devlin, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE STAMOS delivered the opinion of the court:

A jury found defendant Joseph T. McShan guilty of the armed robbery of Dr. Alfred Rosenbloom, and a sentence to serve 10 to 25 years

was imposed. Counsel for defendant presents four arguments for review upon which reversal of the conviction is urged: (1) improper statements by the prosecutor in both his opening statement and his closing argument deprived defendant of a fair trial, (2) the introduction of evidence of other offenses committed by defendant was unduly prejudicial, (3) physical evidence was introduced without being sufficiently connected to both the defendant and the charged offense, and (4) the evidence presented was inadequate to prove defendant guilty of armed robbery beyond a reasonable doubt. In addition, defendant contends that his sentence should be vacated and the cause remanded for a new sentencing hearing which conforms with the Unified Code of Corrections.

The evidence shows that at approximately 12:50 a.m. on January 21, 1973, the complainant, Dr. Rosenbloom, parked his car in the vicinity of 5600 South Hyde Park Boulevard. Within a short distance after alighting from his car, he was grabbed by two men. Complainant noticed that the assailant on his right, the one he later identified as defendant, was holding a small black gun. When this assailant demanded his money, complainant emptied his front pockets. The accomplice removed complainant's watch and ring. Complainant was struck on the head with a gun by the assailant he identified as the defendant McShan. The assailant removed the victim's wallet, which contained about $50 in cash, a driver's license, and various credit cards. The robbery occurred within a span of about five minutes.

Complainant testified that street lights are systematically located along the section of South Hyde Park Boulevard where the robbery occurred. He stated that all of these lights were shining during the robbery. Complainant further testified that there was illumination by a street light about ten feet away and by an illuminated vestibule in an apartment building located just south of where he was robbed.

Immediately after the assailants had fled, police were summoned and complainant described defendant to a Chicago police officer as "a male Negro, approximately nineteen years old, a hundred seventy-five pounds, dark complected and wearing a dark jacket" and carrying "a black gun in the palm of his hand."

On February 5, 1973, 15 days after the robbery, Officer Reimer of the Chicago Police Department approached two men, one of whom was later identified as defendant, whom he suspected were violating the curfew. Upon noticing Officer Reimer, both men discarded weapons and attempted to flee. However, Officer Reimer apprehended defendant and recovered the weapon that defendant had dropped. At the police station, defendant identified himself as "Augusta Robson." The recovered weapon

was identified as a .22-caliber blue steel[1] revolver, about four inches in length. The weapon was inventoried and subsequently destroyed pursuant to court order after that trial.

Based upon several observations of the arrestee, Officer Reimer testified that the person he arrested was about 5'9" tall and weighed between 140 and 145 pounds. But a police report typed by his partner following the arrest described "Robson" as being 6'0" tall and weighing 120 pounds. Although Officer Reimer read the report before it was filed, he did not correct the description of "Robson" until he testified. At trial, Officer Reimer identified defendant as the person he arrested on February 5, 1973. Then, in the early morning of February 16, 1973, a green and white Cadillac containing defendant and two companions was stopped for a traffic violation. The police officer who made the stop saw the butt of a gun under the armrest in the middle of the front seat; and, as a result, the three men were placed under arrest. Thereafter, defendant was identified by Dr. Rosenbloom in a lineup conducted later that day.

In its opening statement, the State revealed, without objection, that a "gun, several rings, watches and credit cards" were found in the car in which defendant was a passenger at the time of his arrest on February 16. None of these items were among those taken from Dr. Rosenbloom on January 21. When the court refused to admit these items into evidence, the State made no further mention of them. Defendant now contends that the prosecutor's reference to these items in his opening statement was prejudicial. We find no merit in defendant's position.

■■ The purpose of an opening statement is, in part, to advise the jury of the facts which the prosecution intends to prove at trial. (*People v. Weller*, 123 Ill.App.2d 421, 258 N.E.2d 806.) But defense counsel cannot sit idly by if he is aware of a claim of inadmissibility to any facts outlined by the State in its opening statement; defense counsel must timely object to avoid prejudice to his client. (*People v. Rogers*, 303 Ill. 578, 136 N.E. 470.) The record in this case does not sustain a claim of bad faith on the part of the prosecutor when he referred in his opening statement to the confiscated items. Not only did the State clearly indicate prior to trial its intention to introduce these items into evidence, but the record reveals a good faith effort by the State to have them admitted. Moreover, defense counsel neither filed a motion to suppress these items nor did he object when reference to them was made in the State's opening statement. Thus, finding no impropriety committed by the State, defendant's argument can stand only if the prosecutor's remarks

---

[1] Officer Reimer testified that blue steel is black in color.

were prejudicial. (*People v. Butler*, 12 Ill.App.3d 541, 298 N.E.2d 798.) Considering that defense counsel admitted in his opening statement that a gun was confiscated at the time of defendant's arrest on February 16, we hold that the State's opening statement did not prejudice the defendant.

■■ Defendant next points to seven instances in which he claims that the State's closing argument was improper. A review of the record, however, discloses that defense counsel made objection to only two of these instances now urged as error. The rule is that failure to object to an argument at trial generally operates as a waiver of the right to object on appeal. (*People v. Nuccio*, 54 Ill.2d 39, 294 N.E.2d 276.) An exception to this general rule is applicable, of course, if the closing argument was so prejudicial that it had the effect of depriving defendant of a fair trial. (*People v. McMillan*, 130 Ill.App.2d 633, 264 N.E.2d 554.) As to the five instances to which no objection was made at trial, we find they did not have this effect. *People v. Pearson*, 52 Ill.2d 260, 287 N.E.2d 715; *People v. Weaver*, 8 Ill.App.3d 299, 290 N.E.2d 691.

Defense counsel did object when in his closing argument the prosecutor commented that "* * * Dr. Rosenbloom might have been buried that morning" had defendant not been arrested on February 16. Arguing that this statement implies continuing criminal activity, defendant contends that this statement was misleading to the jury and unduly prejudicial. We find this statement similar to one made in *People v. Sullivan*, 22 Ill.2d 122, 174 N.E.2d 860, where the prosecutor said, in his closing statement, that "an armed robber is always a potential murderer" and "he has always got that angel of death at his side at every move he makes in pursuance of the crime of robbery." In our judgment, the prosecutor's statement in the instant case is not as inflammatory as those in *Sullivan* where the court would not say "that the remarks of the prosecuting attorney transcended the bounds of legitimate argument." 22 Ill.2d 122, 125, 174 N.E.2d 860, 862.

The second portion of the State's closing argument which drew objection from defense counsel referred to the failure of the defense to call a particular witness. Defendant's mother and his brother both testified that defendant was in Michigan at the time the robbery was committed in Chicago. They allegedly had been visiting Perk Gossett, defendant's uncle. In pretrial discovery, the defense had listed Gossett as an alibi witness. At trial, defense counsel stated that Gossett would be called as a witness as soon as he arrived from Michigan. Although the record reveals that Gossett was present in court just after the close of defendant's case, Gossett was never called upon to testify. When it became clear that defendant had no intention of calling Gossett to the stand, the State

requested that the court call Gossett as its witness or, in the alternative, that the State be permitted to reopen its case and call him as their witness. Both requests were denied.

During the State's closing argument, the prosecutor commented on defendant's failure to call Gossett as a witness:

> "Let's look at the other witnesses because the defense stated to you to look at the defense witnesses. Well, let's look at them. Who testified? The brother testified. Did anybody else testify on behalf of the trip? No. Why didn't Perk Gossett testify? Why? I don't know."

■■ Defendant relies upon *People v. Pepper*, 2 Ill.App.3d 621, 276 N.E.2d 416, and *People v. Pearson*, 2 Ill.App.3d 861, 277 N.E.2d 544. These cases, however, reiterate the general rule that if a witness is equally accessible to both the prosecution and the defense, it is improper for the prosecutor to comment during closing argument regarding defendant's failure to call the witness. This rule is based upon the rationale that since a defendant is presumed innocent, no burden is placed upon him to call witnesses which are equally accessible to the State. (*People v. Munday*, 280 Ill. 32, 117 N.E. 286.) An exception to this rule is applicable when a defendant introduces evidence regarding his activities with a potential witness ostensibly for the purpose of presenting an alibi defense. In this situation, the failure of defendant to call the alibi witness is a proper subject for comment by the prosecutor in his closing argument. (*People v. Stephens*, 18 Ill.App.3d 971, 310 N.E.2d 824.) However, as we noted in *Stephens*, the prosecutor's comments cannot be misleading, unfair or unduly prejudicial. Upon this authority, we hold that the prosecutor's statement regarding defendant's failure to call Gossett as a witness was not improper, but even if we held to the contrary, the implications underlying that statement do not constitute reversible error. *People v. Tolefree*, 14 Ill.App.3d 754, 303 N.E.2d 555; see *People v. Nilsson*, 44 Ill.2d 244, 255 N.E.2d 432.

Defendant's second argument for reversal pertains to evidence introduced by the State showing that defendant was arrested on two occasions subsequent to the robbery, once when possessing a gun, and again when riding in an automobile from which a gun was recovered. Defendant contends that this evidence was presented for the sole purpose of proving his propensity to carry weapons on the street, and thus, his ability to commit armed robbery.

■■ *People v. Porter*, 13 Ill.App.3d 437, 300 N.E.2d 314, is properly cited by defendant for the proposition that evidence of other crimes is inadmissible, unless it is related to a specific exception, such as to show motive, intent, knowledge or identity of the defendant. The facts in

*Porter,* however, are clearly distinguishable from those in the instant case. In *Porter,* a conviction for unlawful sale of a narcotic drug was reversed because an informant was allowed to characterize defendant as a "pusher" when referring to defendant's earlier transactions, other than those constituting the charged offense. The court held that the term "pusher" implied a continuing criminal occupation and therefore was unduly prejudicial to the defendant. But the testimony introduced in the instant case referred to the surrounding circumstances of an arrest rather than to separate offenses allegedly committed by defendant. Testimony may be admitted concerning events leading to the arrest and subsequent identification of a defendant to the charged offense. (*People v. Bolton,* 18 Ill. App.3d 512, 310 N.E.2d 22.) Officer Reimer's testimony pertaining to the gun that was recovered at the time of defendant's arrest on February 5 was properly admitted since the description of the gun was similar to the gun observed by complainant during the robbery. Similarly, the officer who arrested defendant on February 16 could properly relate the circumstances surrounding defendant's arrest which subsequently resulted in his indictment for armed robbery. Only the fact that the arresting officer observed a weapon in the automobile, thus creating probable cause for the arrest, was admitted as the trial judge excluded evidence of the gun[2] and the other confiscated items since they were not directly related to the charged offense. Consequently, we hold that no error resulted from the admission of this evidence.

Defendant's third argument for reversal was first advanced at trial in his motion for a directed verdict. Due to the misdescription contained in the police report prepared following defendant's arrest on February 5, a lack of proof showing that defendant was the person identifying himself as "Augusta Robson" on February 5, and insufficient evidence linking the inventoried gun to both the defendant and the charged offense, defendant contends that neither Officer Reimer's testimony nor the inventory sheet identifying the gun should have been considered by the jury.

■■ Before physical evidence may be admitted at trial, its connection to both the defendant and the charged offense must be adequately shown. (*People v. Jones,* 22 Ill.2d 592, 177 N.E.2d 112.) We find that the minimum contacts test announced in *Jones* has been satisfied in the instant case. In his testimony, Officer Reimer identified defendant as the person he had placed under arrest and from whom he had recovered the inventoried weapon. This evidence is sufficient to connect defendant with the

---

[2] We do not hold that the court properly excluded this weapon.

inventoried weapon. Coupled with this evidence is complainant's testimony describing a gun similar to the inventoried weapon. Since the weapon inventoried on February 5 was destroyed pursuant to court-order, the inventory sheet was properly admitted into evidence.

Contrary to defendant's last contention for reversal, we find that his guilt was established beyond a reasonable doubt.

■■  Defendant also argues that the court imposed a minimum sentence which exceeded the minimum prescribed by law under the Unified Code of Corrections. The Code provides that armed robbery is a Class 1 felony (Ill. Rev. Stat. 1973, ch. 38, par. 18—2), the penalty for which is a maximum term in excess of four years (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1(b)(2)), and a minimum term of four years, unless the court, having regard for the nature and circumstances of the offense and the history and character of the defendant, sets a higher minimum term. (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1(c)(2).) For a Class 1 felony, there is no requirement that the minimum term be not greater than one-third of the maximum term set by the court. Since defendant was sentenced to a term of 10 to 25 years, this sentence was proper under the Unified Code of Corrections.

Accordingly, the judgment of conviction for armed robbery is affirmed, and the sentence imposed is affirmed.

Judgment affirmed.

DOWNING, P. J., and LEIGHTON, J., concur.