THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DARNELL JONES, Defendant-Appellant.

(No. 60701; ■■■■■■■■

First District (4th Division)—November 12, 1975.

James J. Doherty, Public Defender, of Chicago (Linda Dale Woloshin and Ronald P. Alwin, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Michael J. Angarola, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE ADESKO delivered the opinion of the court:

The defendant, Darnell Jones, was indicted for murder and attempt armed robbery. At a jury trial, he was found guilty as charged. He was sentenced to a term of 25 years to 75 years. From these convictions, defendant appeals and urges that the trial court erred in denying defendant's motion to suppress the identification, in admitting a police artist's sketch into evidence, in allowing the jury to view an uncropped police photograph of the defendant, and in restricting cross-examination of the identifying witness.

On February 6, 1972, Dolita Tate, then 12 years of age, lived with her mother in apartment three, at 4910 South Blackstone, Chicago. At approximately 5 o'clock the afternoon of that date, Dolita visited the King apartment, just down the hall in apartment one. Present in the apartment were Mr. King, Mr. Nelms and a woman named Theda who lived in the building.

At about 6 o'clock p.m., while King and Nelms were in the kitchen, Dolita answered a knock at the door. Mr. Talley, the deceased, asked to see Mr. King. Dolita knew Talley and opened the door. Two men entered, Talley and a stranger to Dolita. The stranger pulled out a shotgun, which had been concealed under his coat, and told Theda to get out and close the door. She complied. At trial, Dolita identified the stranger as Darnell Jones, the defendant. Talley and the defendant joined King and Nelms in the kitchen. Talley then said to King, "This man says he wants everything." King responded, "Take anything you want." The defendant then commanded to Dolita, "Come here, little girl!' As he held a shotgun to Dolita's head, defendant said, "I'll blow her brains out." The defen-

dant added, "I want the stuff, man. I'm not playing." The defendant then shot Talley and Talley grabbed a pot and leaped upon the defendant. Nelms went to Talley's aid and Dolita ran from the apartment screaming.

That same evening, Dolita went to the police station and looked through three books of photographs but was unable to select a photograph of the defendant. Investigator Michael Caccitolo testified that a photograph of the defendant was not contained within those three books.

On February 7, 1972, Dolita gave a description of the murderer to a police artist. She described the man as having "a big natural, sneaky eyes, large nostrils and a medium size mouth." Following Dolita's directions, the artist made a charcoal drawing. At trial, a photograph of the artist's sketch was introduced into evidence. Dolita testified that the sketch in the photograph was the sketch drawn under her instructions. She stated that the sketch depicted the murderer as he looked on the day of the crime.

On February 8, 1972, Investigator Caccitolo went to Dolita's apartment and gave her six photographs. After examining all six photographs, Dolita selected a photograph of the defendant and said, "This is the offender."

A lineup was conducted by Investigator Caccitolo on February 9, 1972. He testified that six men participated in the lineup in which the defendant stood in the number three position. Dolita viewed the lineup and said, "Number three is the person that shot and killed Mr. Talley."

After a hearing, defendant's pretrial motion to suppress his identification was denied.

Defendant contends that the trial court committed reversible error when it denied his motion to suppress the identification. He asserts that the identification was based upon a lineup which was conducted in a prejudicially suggestive manner. The trial court conducted a hearing on the motion to suppress. This court has examined both a photograph of the lineup and the testimony adduced at the hearing. We conclude that the lineup was not conducted in a manner which was violative of defendant's right to due process or which would lead to a mistaken identification. There were six individuals in the lineup. Defendant was 18 years of age. The other participants in the lineup were 18, 21, 23, 27 and 29 years of age. Defendant was six feet two inches in height. Two of the other participants were six feet one inch and six feet three inches. Three of the participants in the lineup were of approximately the same weight as the defendant. From our review of the testimony and the photograph of the lineup, we conclude that the manner in which the lineup was conducted was not conducive to erroneous identification so as to violate defendant's right to due process.

Defendant next contends that the introduction of a police artist's sketch into evidence over objection was reversible error. The State concedes that under *People v. Turner* (1968), 91 Ill.App.2d 436, 235 N.E.2d 317, the introduction of the sketch into evidence was improper. However, the State urges that, since the introduction of the sketch did not improperly influence the trier of fact, harmless error resulted. We agree.

■■ Dolita Tate examined three books of photographs at the police station. None of the books contained a photograph of the defendant and she was not able to select a photograph of the perpetrator of the murder from the three books. The next day, Dolita described the offender to a police artist who drew a charcoal drawing of the offender. Dolita then identified the defendant by selecting the defendant's photograph from a group of six photographs, selected the defendant from a lineup, and identified the defendant as the offender at trial. Since the sketch was only one of several methods of identification utilized, this court does not believe that the introduction of the sketch into evidence improperly influenced the jury thereby requiring reversal.

Defendant next argues that the "evidentiary use of mug shots constituted prejudicial error." The State maintains that "the photographs were introduced for the relevant purpose of showing the group of photographs from which the defendant's photograph was selected by Dolita Tate and were not offered to show an arrest for another offense.

■ In *People v. Coleman* (1974), 17 Ill.App.3d 421, 431, 308 N.E.2d 364, 371, the following was stated:

> "Subject to exception, it is generally held that evidence of a distinct substantive offense, or evidence which tends to mislead or prejudice the jury, cannot be admitted in a prosecution for a different offense. [Citation.] When the evidence of prior criminality is not direct, but merely inferential, the determinative issue is the probative and prejudicial effect of the nexus between the admitted and prior criminality. [Citations.] For example, although a prior criminal record may be inferred from the use of police photographs, their admission into evidence or testimony in reference thereto, is not error *per se.*"

This court believes that the value of defendant's police photograph as used in the instant case to help explain the identification procedure far outweighed the minimal prejudicial effect such use may have had on the trier of fact. Therefore, the use of the photograph at trial did not constitute reversible error.

Defendant lastly contends that the trial court erred in restricting the cross-examination of Dolita Tate.

At the hearing on the motion to suppress, Dolita Tate testified that

the police telephoned her mother requesting Dolita's presence at a lineup. Her mother then told Dolita that the man whose picture she had selected from the six shown to her was in custody. Dolita also testified that on the way to the police station a police officer told her that they had the man in custody. At trial, however, Dolita denied that her mother told her the man whose picture she had identified was in custody. She further testified that the police officers told her that they had the man in custody only after she had picked him out of the lineup. The trial court sustained the State's objection to the defense's exploration into the discrepancies at trial.

██ Generally, the latitude to be allowed in cross-examination of witnesses rests largely in the sound discretion of the trial court. Only where there is clearly an abuse of discretion, producing manifestly prejudicial results to a defendant, will a court of review interfere. (*People v. DeSavieu* (1973), 14 Ill.App.3d 912, 303 N.E.2d 782.) This court believes that the restrictions imposed in the instant case on the impeachment cross-examination of Dolita Tate, when viewed in the context of the totality of her positive and uncontradicted testimony, resulted in no manifest prejudice to defendant. Therefore, the trial court did not abuse its discretion.

For the reasons stated, the judgments of conviction of defendant, Darnell Jones, are affirmed.

Judgments affirmed.

DIERINGER, P. J., and JOHNSON, J., concur.